IN THE UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | District Court |
| v. | ) | Case No. |
| | ) | 19-10102 |
| MATTHEW ALEXANDER III, | ) | |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF TESTIMONY OF OFFICER JAMIE THOMPSON

On the 12th day of November, 2019, came on to be heard proceedings in the above-entitled and numbered cause before the HONORABLE ERIC F. MELGREN, Judge of the United States District Court for the District of Kansas, sitting in Wichita, commencing at 1:38 P.M. Proceedings recorded by machine shorthand. Transcript produced by computer-aided transcription.

APPEARANCES:

The plaintiff appeared by and through:
    Mr. Ryan Huschka
    United States Attorney's Office
    500 State Avenue
    Suite 360
    Kansas City, Kansas  66101

    Mr. Alan Metzger
    United States Attorney's Office
    1200 Epic Center
    301 North Main
    Wichita, Kansas 67202

The defendant appeared in person and by and through:
    Mr. Mitch E. Biebighauser
    Federal Public Defender's Office
    850 Epic Center
    301 North Main Street
    Wichita, Kansas 67202

I N D E X

PAGE

WITNESSES
    For the Plaintiff
    OFFICER JAMIE THOMPSON

        Direct Examination By Mr. Huschka          3

        Cross-Exam By Mr. Biebighauser            13


EXHIBITS                                         ADMD

For the Plaintiff:

No. SH-2       CD with Officer Thompson's          11

        Axon video



REPORTER'S CERTIFICATE                            19

|          |    |                                                           |
|----------|----|-----------------------------------------------------------|
|          | 1  |              OFFICER JAMIE THOMPSON,                      |
|          | 2  | having been first duly sworn to testify the truth, the    |
|          | 3  | whole truth, and nothing but the truth, testified as      |
| 15:16:01 | 4  | follows:                                                  |
| 15:16:01 | 5  |              DIRECT EXAMINATION                           |
| 15:16:01 | 6  | BY MR. HUSCHKA:                                           |
| 15:16:14 | 7  | Q.    Officer Thompson, could you just state your full    |
| 15:16:17 | 8  | name for the record.                                      |
| 15:16:17 | 9  | **A.    I'm officer Jamie Thompson with the Wichita Police** |
| 15:16:21 | 10 | **Department.**                                           |
| 15:16:21 | 11 | Q.    How long have you been with the Wichita Police      |
| 15:16:24 | 12 | Department?                                               |
| 15:16:24 | 13 |       THE COURT:  Officer, be careful you don't slide     |
| 15:16:27 | 14 | the back leg off that elevated platform.  I'd hate for    |
| 15:16:31 | 15 | you to be the first person to tumble out of there, but    |
| 15:16:34 | 16 | it's going to happen at some point.                       |
| 15:16:36 | 17 | BY MR. HUSCHKA:                                           |
| 15:16:36 | 18 | Q.    How long have you been with the Wichita Police      |
| 15:16:40 | 19 | Department?                                               |
| 15:16:40 | 20 | **A.    Almost ten years.**                               |
| 15:16:42 | 21 | Q.    And what is your -- could you just describe         |
| 15:16:46 | 22 | generally your current role and responsibilities.         |
| 15:16:48 | 23 | **A.    Currently I work drug complaints.**               |
| 15:16:51 | 24 | Q.    And what did you do prior to that?                  |
| 15:16:54 | 25 | **A.    Before that I was a member of the Violent Crimes** |

| | | |
|---|---|---|
| 15:16:58 | 1 | **Community Response Team and investigated violent crimes** |
| 15:17:00 | 2 | **and gang members and violent members of our community.** |
| 15:17:03 | 3 | Q.   And which of those positions did you have in June |
| 15:17:08 | 4 | of 2019? |
| 15:17:08 | 5 | **A.   In June of '19 I was with the Violent Crimes** |
| 15:17:14 | 6 | **Community Response Team.** |
| 15:17:14 | 7 | Q.   I want to bring your taken to June 13th, 2019. |
| 15:17:18 | 8 | Were you working for Wichita Police Department that day? |
| 15:17:20 | 9 | **A.   Yes, I was.** |
| 15:17:21 | 10 | Q.   And in the Violent Crimes unit? |
| 15:17:23 | 11 | **A.   Yes.** |
| 15:17:25 | 12 | Q.   Were you traveling with another officer that day? |
| 15:17:28 | 13 | **A.   Yes.** |
| 15:17:28 | 14 | Q.   What officer? |
| 15:17:29 | 15 | **A.   Officer Henry.** |
| 15:17:31 | 16 | Q.   And what area were you in during the kind of late |
| 15:17:37 | 17 | afternoon -- or, excuse me, late morning, early |
| 15:17:40 | 18 | afternoon, period that day? |
| 15:17:41 | 19 | **A.   Harry and Hillside.** |
| 15:17:44 | 20 | Q.   Do you recall an incident involving the stop of a |
| 15:17:46 | 21 | gray Pontiac that day? |
| 15:17:48 | 22 | **A.   Yes.** |
| 15:17:48 | 23 | Q.   What first brought that vehicle to your attention? |
| 15:17:53 | 24 | **A.   We had been driving eastbound on Harry and I was** |
| 15:17:56 | 25 | **looking down at a computer, looking around, and Officer** |

| | | |
|---|---|---|
| 15:17:58 | 1 | Henry was driving.  He turned the car around to follow a |
| 15:18:01 | 2 | car, and pointed out to me a gray G6 in the curb lane. |
| 15:18:05 | 3 | Q.    And what happened after Officer Henry initially |
| 15:18:10 | 4 | noticed that vehicle? |
| 15:18:13 | 5 | A.    I looked up and saw the vehicle in the curb lane, |
| 15:18:16 | 6 | and saw that it had turned its left signal on as if it |
| 15:18:20 | 7 | was going to change lanes, and then immediately it turned |
| 15:18:23 | 8 | its right signal on and makes an immediate turn into the |
| 15:18:25 | 9 | Hardees parking lot. |
| 15:18:27 | 10 | Q.    And approximately how far was the vehicle from the |
| 15:18:31 | 11 | Hardees parking lot before it activated its left and then |
| 15:18:35 | 12 | right blinker? |
| 15:18:36 | 13 | A.    Probably 10 feet or less.  It was basically |
| 15:18:39 | 14 | turning its turn signal on as it was making that turn. |
| 15:18:44 | 15 | Q.    After this observation, was a stop initiated? |
| 15:18:47 | 16 | A.    Yes.  We tried to catch up to the vehicle in the |
| 15:18:50 | 17 | Hardees parking lot.  As we turned into the parking lot, |
| 15:18:52 | 18 | we saw the vehicle picking up speed and going around the |
| 15:18:55 | 19 | corner in the parking lot.  And after we made the corner, |
| 15:18:59 | 20 | the vehicle stopped, then we initiated the traffic stop |
| 15:19:02 | 21 | at that point. |
| 15:19:02 | 22 | Q.    Did you know the driver of that vehicle? |
| 15:19:04 | 23 | A.    Not before the stop. |
| 15:19:06 | 24 | Q.    What about after the stop when you approached the |
| 15:19:10 | 25 | vehicle? |

15:19:10   1  **A.      Yes, after we made the stop, Officer Henry advised**
15:19:13   2  **me that it was Matthew Alexander, and I recognized that**
15:19:17   3  **name from prior contact with him.**
15:19:18   4  Q.      And at that time what did you know about
15:19:21   5  Mr. Alexander?
15:19:22   6  **A.      I knew that in 2017 I had attempted to stop**
15:19:26   7  **Mr. Alexander after he was driving a vehicle away from a**
15:19:29   8  **club, and at that point he ran from us in his car, and**
15:19:33   9  **during the chase he threw a handgun out of the vehicle.**
15:19:36   10     **We recovered that handgun, and he was found to be**
15:19:39   11 **at that time a convicted felon, which will prohibit his**
15:19:43   12 **firearm possession.**
15:19:44   13 Q.      Did you understand that Mr. Alexander had any
15:19:47   14 criminal street gang affiliations?
15:19:49   15 **A.      Yes, I knew that he was a gang member.**
15:19:53   16 Q.      Did you have any understanding or knowledge of the
15:19:56   17 nature of his prior felony convictions?
15:20:00   18 **A.      I knew that he had many violent felonies.  I did**
15:20:05   19 **not remember specifically what they were, but I knew that**
15:20:07   20 **at a minimum they prohibited him from possessing a**
15:20:09   21 **firearm.  And I knew that also around that time, and I**
15:20:14   22 **think within the past couple of days or that day, his**
15:20:16   23 **name had come up in reference to a homicide**
15:20:19   24 **investigation.**
15:20:20   25 Q.      Was -- after the stop was initiated, was

15:20:23  1   Mr. Alexander asked to step out of the vehicle?
15:20:26  2   **A.     Yes.**
15:20:27  3   Q.     And what did you do upon him exiting the vehicle?
15:20:31  4   **A.     Officer Henry had asked Mr. Alexander to step out.**
15:20:34  5   **As he did so, I kind of looked at Mr. Alexander's**
15:20:37  6   **waistband to see if he was concealing any weapons on his**
15:20:40  7   **waistband that Officer Henry wasn't able to see.  After**
15:20:42  8   **he got out of the car, I walked around to the driver's**
15:20:45  9   **side of the car to assist Officer Henry.  And it was at**
15:20:48  10  **that point that Officer Henry advised me that it was Matt**
15:20:52  11  **Alexander, at which point I decided to do a protective**
15:20:55  12  **sweep of the vehicle for dangerous weapons.**
15:20:56  13  Q.     And what areas did you sweep first?
15:21:01  14  **A.     First I swept underneath the driver's seat, and**
15:21:04  15  **then the center console area.**
15:21:06  16  Q.     Are those the areas where you would typically go
15:21:09  17  to first?
15:21:10  18  **A.     Yes.  That's -- in my experience, that's a very**
15:21:13  19  **high-probability location where a driver would conceal a**
15:21:17  20  **handgun.**
15:21:17  21  Q.     And are your actions upon learning that it was
15:21:22  22  Mr. Alexander different than they would have been had
15:21:26  23  that been some other motorist who you were not familiar
15:21:29  24  with?
15:21:29  25  **A.     Yes.  Without that prior knowledge, we would not**

|  |  |  |
|---|---|---|
| 15:21:33 | 1 | **just be pulling people out of cars absent some sort of** |
| 15:21:36 | 2 | **threat to our safety.** |
| 15:21:37 | 3 | Q.    So even separate from Officer Henry telling you |
| 15:21:41 | 4 | that it was Matt Alexander, was there any significance to |
| 15:21:45 | 5 | you of the fact that Officer Henry had asked the driver |
| 15:21:47 | 6 | to step out of the vehicle? |
| 15:21:49 | 7 | **A.    Yes.  I mean, that tells me, once Officer Henry** |
| 15:21:52 | 8 | **makes that decision, that he's seeing something on that** |
| 15:21:54 | 9 | **side of the car that's causing him to want to remove the** |
| 15:21:57 | 10 | **driver from that car, so that could be -- it could be** |
| 15:22:00 | 11 | **drugs, it could be weapons, it could be the driver's** |
| 15:22:03 | 12 | **movements, maybe he's reaching down to the side of his** |
| 15:22:05 | 13 | **seat or something like that.  But that tells me that** |
| 15:22:08 | 14 | **Officer Henry does not want that driver to be near that** |
| 15:22:10 | 15 | **car.** |
| 15:22:12 | 16 | Q.    What did you find in the vehicle? |
| 15:22:14 | 17 | **A.    I found a bag of what I initially thought was** |
| 15:22:16 | 18 | **marijuana but ended up being K2 in the center console.** |
| 15:22:20 | 19 | Q.    Where did you find it? |
| 15:22:22 | 20 | **A.    It was -- as you lift the armrest up on the center** |
| 15:22:25 | 21 | **console, it's immediately inside.  It was in a clear** |
| 15:22:29 | 22 | **ziplock -- not ziplock, a clear sandwich-type baggy,** |
| 15:22:34 | 23 | **knotted.** |
| 15:22:36 | 24 | Q.    What did you do after you discovered the -- what |
| 15:22:39 | 25 | you thought was marijuana in the center console? |

```
15:22:42    1  A.      I pulled my head out of the vehicle and I told
15:22:44    2  Henry to "15."
15:22:47    3  Q.      And what does that mean?
15:22:48    4  A.      That means to place him in custody, to place
15:22:51    5  Mr. Alexander in custody.
15:22:52    6  Q.      And then after that did you continue to search the
15:22:55    7  vehicle at that point?
15:22:56    8  A.      Yes.  I first went to help Officer Henry place
15:22:59    9  Mr. Alexander in handcuffs, and then I went back to
15:23:02   10  continue searching the vehicle.
15:23:05   11  Q.      After you discovered -- did you eventually realize
15:23:08   12  that it was synthetic marijuana?
15:23:10   13  A.      Yes.
15:23:10   14  Q.      So after you had discovered this synthetic
15:23:13   15  marijuana in the vehicle, did Officer Henry find anything
15:23:19   16  else on Mr. Alexander's person?
15:23:20   17  A.      Yes, Mr. -- or Officer Henry found a handgun in
15:23:25   18  Mr. Alexander's pocket.
15:23:27   19  Q.      Do you wear a body camera as part of your uniform?
15:23:31   20  A.      Yes.
15:23:31   21  Q.      And were you wearing your body camera on
15:23:35   22  June 13th, 2019?
15:23:37   23  A.      Yes.
15:23:37   24  Q.      Did you activate it during this encounter with
15:23:40   25  Mr. Alexander?
```

```
15:23:41   1   A.      Yes.
15:23:41   2           MR. HUSCHKA:  Permission to approach, Your Honor.
15:23:43   3           THE COURT:  You may.
15:23:46   4   BY MR. HUSCHKA:
15:23:46   5   Q.      Officer Thompson, I'm handing you what has been
15:23:48   6   marked as Government's Exhibit SH-2.  Do you recognize
15:23:53   7   that?
15:23:54   8   A.      Yes.
15:23:54   9   Q.      What is it?
15:23:55  10   A.      It's a disc containing my footage from my Axon on
15:24:00  11   that day for that stop.
15:24:02  12   Q.      And have you reviewed that disc prior to court
15:24:05  13   today?
15:24:06  14   A.      Yes.
15:24:06  15   Q.      How do you know that?  Or is there any indication
15:24:10  16   on that disc reflecting that you reviewed it?
15:24:12  17   A.      Yes, I put my initials on that disc following its
15:24:15  18   review.
15:24:15  19   Q.      And was that disc a fair and accurate depiction of
15:24:20  20   the events that happened that day, the incident involving
15:24:23  21   Mr. Alexander?
15:24:24  22   A.      Yes.
15:24:24  23           MR. HUSCHKA:  Your Honor, the Government moves to
15:24:26  24   admit Government's Exhibit SH-2.
15:24:30  25           THE COURT:  Mr. Biebighauser?
```

```
15:24:30   1            MR. BIEBIGHAUSER:  No objection.
15:24:31   2            THE COURT:  The exhibit will be admitted.
15:24:33   3            MR. HUSCHKA:  Permission to publish, Your Honor.
15:24:35   4            THE COURT:  Tell me, Mr. Huschka, what am I going
15:24:38   5   to see in this video that is both relevant to the issues
15:24:41   6   relevant here today and is not completely duplicative of
15:24:46   7   what I've already seen?
15:24:47   8            MR. HUSCHKA:  I think the only portion -- and we
15:24:50   9   actually would only intend to play about less than two
15:24:52  10   minutes -- there's some audio that you cannot hear on
15:24:57  11   Officer Henry's.  But other than that it is substantially
15:25:00  12   similar, but you do get the vantage point of the
15:25:03  13   discovery of the synthetic marijuana in the center
15:25:05  14   console.
15:25:06  15            THE COURT:  He's not charged in this case with
15:25:07  16   marijuana.
15:25:08  17            MR. HUSCHKA:  No, Your Honor.  Well, the only --
15:25:11  18   the defense has challenged both the stop and the search
15:25:17  19   incident to arrest based on the discovery of the
15:25:20  20   synthetic marijuana.
15:25:21  21            THE COURT:  I don't think that's what the
15:25:24  22   defense's challenge is, is that the basis -- well,
15:25:26  23   there's no dispute that she discovered -- that the
15:25:28  24   officer discovered the material, whatever it later was
15:25:31  25   determined to be.  So I don't know that they're saying
```

15:25:34  1  that it wasn't really discovered in the car.  That's not
15:25:37  2  relevant to this case.
15:25:39  3           MR. HUSCHKA:  Your Honor, I think to the point, I
15:25:42  4  don't think there's anything earth shattering here that
15:25:44  5  the Court is --
15:25:45  6           THE COURT:  Well, I'm not worried about earth
15:25:47  7  shattering.  I'm worried about cumulative.  So you think
15:25:50  8  you've got two minutes in here that picks up audio that
15:25:52  9  did not otherwise -- was not otherwise evident in Officer
15:25:55 10  Henry's?
15:25:55 11           MR. HUSCHKA:  The only audio, there is a reference
15:25:58 12  to the "15" that the witnesses have described being
15:26:03 13  signaled from Officer Thompson --
15:26:04 14           THE COURT:  All right.
15:26:05 15           MR. HUSCHKA:  -- to Officer Henry.
15:26:06 16           THE COURT:  Well, let's play those two minutes.
15:26:10 17           (Playing Government's Exhibit SH-2.)
15:26:39 18           THE COURT:  Ms. Heston, are we advancing to the
15:26:42 19  relevant portion here?  It looks like we're starting at
15:26:44 20  the beginning.
15:26:44 21           MR. HUSCHKA:  I think if we can -- it starts
15:26:47 22  fairly quickly, Your Honor, so it will probably take us
15:26:50 23  longer to go back and forth.
15:27:55 24           (Continuing to view Government's Exhibit SH-2.)
15:27:55 25           MR. HUSCHKA:  Ms. Heston, you can stop it there

```
15:27:58    1  there.
15:27:58    2  BY MR. HUSCHKA:
15:27:58    3  Q.    Officer Thompson, what does "15" refer to?
15:28:01    4  A.    It's shorthand for 10-15, which means to place him
15:28:05    5  in custody.
15:28:05    6  Q.    So at this point you're telling Officer Henry to
15:28:08    7  place Mr. Alexander into custody?
15:28:11    8  A.    Yes.
15:28:12    9        MR. HUSCHKA:  Just one moment, Your Honor.
15:28:14   10        THE COURT:  Certainly.
15:28:14   11        (Whereupon, a sotto voce discussion was had
15:28:15   12  between
15:28:15   13        MR. HUSCHKA:  No further questions, Your Honor.
15:28:16   14        THE COURT:  Thank you.
15:28:17   15        Mr. Biebighauser?
15:28:18   16        MR. BIEBIGHAUSER:  Just one moment.
15:28:19   17        (Whereupon, a sotto voce discussion was had
15:28:20   18  between Mr. Biebighauser and the defendant.)
15:29:03   19        MR. BIEBIGHAUSER:  I'm sorry, Judge, may I
15:29:05   20  proceed?
15:29:05   21        THE COURT:  Yes, certainly.
15:29:08   22                    CROSS-EXAMINATION
15:29:08   23  BY MR. BIEBIGHAUSER:
15:29:08   24  Q.    You said you were previously with the Violent
15:29:11   25  Crimes unit?
```

15:29:11  1  **A.     Correct.**
15:29:11  2  Q.     That was until about June of 2019?
15:29:13  3  **A.     I was with the Violent Crimes unit until about**
15:29:16  4  **three weeks ago.**
15:29:17  5  Q.     Until three weeks ago?
15:29:18  6  **A.     Yes.**
15:29:19  7  Q.     Where are you now?
15:29:19  8  **A.     I'm with the Special Investigations Bureau**
15:29:22  9  **Community Response Team.**
15:29:25  10 Q.     Is that a sideways promotion, demotion?
15:29:29  11 **A.     It's essentially sideways.**
15:29:32  12 Q.     I'm going back to the time of the stop.  You said
15:29:34  13 you recognized -- you said you recognized Matt Alexander
15:29:39  14 when you heard the name?
15:29:40  15 **A.     Yes.**
15:29:41  16 Q.     You said you recognized him from a car chase in
15:29:47  17 2017 away from a club?
15:29:48  18 **A.     Yes.**
15:29:48  19 Q.     What was the date of that?
15:29:50  20 **A.     I don't have the date specifically in front of me.**
15:29:52  21 **It was in the summer of 2017.**
15:29:54  22 Q.     Okay.  Before that do you know where Matt was?  I
15:30:00  23 mean, generally in his life where he was?
15:30:02  24 **A.     I'm sorry, I don't follow.**
15:30:03  25 Q.     Are you aware that he was in prison from 2015

```
15:30:06   1  until 20 -- mid 2017?
15:30:09   2  A.      Actually, now that you say that, I do remember,
15:30:12   3  but at that time I knew that he was just recently
15:30:14   4  released from prison.
15:30:15   5  Q.      Okay.  At the time of this chase?
15:30:16   6  A.      At the time of the chase in 2017.
15:30:18   7  Q.      Did you stop the car?  Did the car stop?
15:30:21   8  A.      Eventually it stopped.
15:30:22   9  Q.      Did you meet the people that were inside?
15:30:24  10  A.      I met the person that was inside.
15:30:26  11  Q.      Just one person?
15:30:28  12  A.      Yes.
15:30:29  13          MR. BIEBIGHAUSER:  Can I have a moment, Judge?
15:30:31  14  A.      I believe it was one person.
15:30:32  15          MR. BIEBIGHAUSER:  May I have a moment?
15:30:32  16          (Whereupon, a sotto voce discussion was had
15:30:35  17  between Mr. Biebighauser and the defendant.)
15:30:35  18  BY MR. BIEBIGHAUSER:
15:30:35  19  Q.      You don't remember the date of that?
15:30:38  20  A.      I don't have it in front of me.
15:30:39  21  Q.      That's okay.  If you don't you don't.
15:30:42  22  A.      I don't.
15:30:42  23  Q.      All right.  Where did that occur?
15:30:44  24  A.      It -- the chase began in the area of 21st and
15:30:48  25  Oliver and it terminated at WSU.
```

15:30:51  1  Q.     Do you know the -- you probably don't -- the WPD
15:30:57  2  case number for it?
15:30:58  3  **A.     No, not offhand.  I'm sorry.**
15:30:59  4  Q.     If I call you sometime and ask you, do you think
15:31:01  5  you could tell me?
15:31:03  6  **A.     Yeah, I could find that information for sure.**
15:31:05  7  Q.     Okay.  Okay.  At the time that Matt -- that,
15:31:16  8  excuse me, Mr. Alexander was removed from the car, it was
15:31:21  9  Officer Henry that asked him out; is that right?
15:31:24  10 **A.     Yes.**
15:31:24  11 Q.     And you said that tells you something about the
15:31:26  12 stop?
15:31:27  13 **A.     Yes.**
15:31:28  14 Q.     One of the things that it would tell you would be
15:31:30  15 that perhaps there's a gun in the car?
15:31:33  16 **A.     Perhaps.  Perhaps he had seen that.  What it**
15:31:36  17 **basically tells me is that something is not normal.**
15:31:39  18 Q.     Okay.  In this case what was not normal about
15:31:42  19 seeing Matthew in the driver's seat of the car?
15:31:46  20 **A.     Well, I would be presuming at this point.  Just**
15:31:48  21 **from my knowledge of Officer Henry, I would know that he**
15:31:54  22 **recognized Matt Alexander at that point and knew we**
15:31:55  23 **needed to sweep this area and this person for weapons**
15:31:57  24 **because he's a dangerous felon.**
15:31:59  25 Q.     All right.  And that was because of something

```
15:32:00   1  based on his past, not something you knew he saw in that
15:32:02   2  car at that moment?
15:32:03   3  A.    I did not know that at the time that he was
15:32:06   4  pulling him out.
15:32:06   5  Q.    Right.  That's the only time I'm worried about.
15:32:06   6  A.    Yes.
15:32:09   7  Q.    At the time you pulled him out, you didn't know
15:32:10   8  that he saw a gun in the car?
15:32:12   9  A.    I didn't know whether he did or did not.
15:32:13  10  Q.    Right.  And you didn't know whether he did or did
15:32:15  11  not see anything else in particular?
15:32:17  12  A.    Correct.
15:32:18  13        MR. BIEBIGHAUSER:  Nothing further.
15:32:20  14        THE COURT:  Mr. Huschka, anything --
15:32:21  15        MR. BIEBIGHAUSER:  Excuse me.  Sorry.
15:32:23  16        THE COURT:  Hold on.
15:32:26  17        (Whereupon, a sotto voce discussion was had
15:32:27  18  between Mr. Biebighauser and the defendant.)
15:32:32  19  BY MR. BIEBIGHAUSER:
15:32:33  20  Q.    The person in the car that you just mentioned in
15:32:35  21  the 2017, that was Matthew Alexander?
15:32:38  22  A.    Yes, he was the driver.
15:32:40  23        MR. BIEBIGHAUSER:  Nothing further.
15:32:40  24        THE COURT:  Mr. Huschka?
15:32:42  25        MR. HUSCHKA:  No questions, Your Honor.
```

```
15:32:43   1          THE COURT:  May the officer step down?
15:32:44   2          MR. BIEBIGHAUSER:  Yes, Judge.
15:32:45   3          MR. HUSCHKA:  Yes, Your Honor.
15:32:45   4          THE COURT:  Officer, thank you for your presence
15:32:46   5  here.  You may step down.
15:32:48   6          THE WITNESS:  Thank you, Your Honor.
           7          (Witness excused from the witness stand.)
           8
           9
          10
          11
          12
          13
          14
          15
          16
          17
          18
          19
          20
          21
          22
          23
          24
          25
```

C E R T I F I C A T E

    I, Johanna L. Wilkinson, United States Court Reporter in and for the District of Kansas, do hereby certify:

    That the above and foregoing proceedings were taken by me at said time and place in stenotype;

    That thereafter said proceedings were transcribed under my direction and supervision by means of computer-aided transcription, and that the above and foregoing constitutes a full, true and correct transcript of said proceedings;

    That I am a disinterested person to the said action.

    IN WITNESS WHEREOF, I hereto set my hand on this the 13th day of November, 2019.


    s/ Johanna L. Wilkinson
    Johanna L. Wilkinson, CSR, CRR, RMR
    United States Court Reporter