# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 19-10102-EFM

MATTHEW ALEXANDER, III,

    *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Matthew Alexander III's Motion to Suppress (Doc. 17). Alexander was arrested on June 13, 2019, and is charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). On November 12, the Court heard the parties' arguments on this motion. For the following reasons, the Court denies Alexander's motion to suppress.

### I.    Factual and Procedural Background

On June 13, 2019, Officers Jared Henry and Jamie Thompson pulled over Alexander for failing to properly signal a turn. Alexander had activated his turn signal less than 100 feet before turning into the Hardee's restaurant at Hillside St. and Harry St. The officers followed Alexander into the Hardee's parking lot, initiated a traffic stop, and ordered Alexander out of his car. Henry

recognized Alexander from prior personal encounters and knew of his criminal history. Specifically, Henry was aware that Alexander had a prior felony conviction, a prior arrest for an aggravated battery, and a history of unlawfully possessing firearms. Henry patted down Alexander for weapons before escorting him approximately 10 feet away to sit and wait on a curb. Henry remained with Alexander while Thompson began to search the car.

After a brief search of the car, Thompson discovered synthetic marijuana in the center console. At that point, Henry handcuffed Alexander's arms behind his back while he remained seated on the curb. Henry then noticed a bulge in Alexander's shorts and ordered him to stand up so that he could search him again. During this second search, Henry found a pistol in Alexander's front pocket. Henry then placed Alexander in the back of the police car while Thompson and Henry completed the search of Alexander's car.

On July 16, 2019, a grand jury indicted Alexander on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He now moves to suppress evidence stemming from the traffic stop. The Court held a hearing on this matter on November 12, where the Government called Officers Henry and Thompson as witnesses.

## II.     Legal Standard

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."[1] Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search or seizure."[2] If a search or

---

[1] U.S. CONST. amend. IV.

[2] *United States v. Calandra*, 414 U.S. 338, 347 (1974).

seizure violates the Fourth Amendment, the "fruit of the poisonous tree" doctrine prohibits the admission of any subsequently obtained evidence, including information, objects, or statements.[3] Searches must be authorized by a warrant unless an exception to the warrant requirement applies.[4] The government bears the burden to prove that a warrantless search or seizure was justified.[5]

### III. Analysis

#### A. Traffic Stop was Lawful

The Court concludes that the officers' traffic stop of Alexander was lawful. "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."[6] Kansas law requires drivers to activate their turn signal at least 100 feet before making a turn.[7] The officers observed Alexander turn into the Hardee's parking lot without activating his turn signal at least 100 feet before turning.[8] As such, the officers were justified in pulling Alexander over for the observed traffic violation.

#### B. Protective Sweep of Vehicle was Lawful

"The Fourth Amendment generally requires police to secure a warrant before conducting a search."[9] But there are exceptions to the warrant requirement. Officer Thompson did not acquire

---

[3] *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963).

[4] *California v. Carney*, 471 U.S. 386, 390 (1985).

[5] *United States v. Zubia-Melendez*, 263 F.3d 1155, 1160 (10th Cir. 2001) (citations omitted).

[6] *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995).

[7] K.S.A. § 8-1548(b).

[8] Alexander challenged the stop but provided no evidence or argument for why the traffic stop was unlawful.

[9] *Maryland v. Dyson*, 527 U.S. 465, 466 (2013) (citing *California v. Carney*, 471 U.S. 389, 390-91 (1985)).

a warrant to search Alexander's vehicle, and thus, the Court must consider whether any exceptions to the warrant requirement apply.

The Government relies on one exception to the warrant requirement: the "protective sweep" doctrine. In *Terry v. Ohio*,[10] the Supreme Court held that an officer may search a suspect for weapons if he reasonably believes he is dealing with an armed and dangerous individual.[11] In *Michigan v. Long*,[12] the Court applied *Terry* to situations in which an officer has conducted a traffic stop.[13] Thus, an officer may conduct a protective sweep of a vehicle if he reasonably believes that the suspect poses a danger and may gain immediate access to a weapon.[14] The purpose of the protective sweep is officer safety, and it is "limited to those areas in which a weapon may be placed or hidden."[15] The protective sweep may encompass any area that could contain a weapon and to which the suspect could later gain access.[16]

Notably, the protective sweep is not subject to the limits placed on a search incident to arrest. A protective sweep usually occurs before a suspect is arrested. "In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is complete."[17] Therefore, unlike a search

---

[10] 392 U.S. 1 (1968).

[11] *Id.* at 27.

[12] 463 U.S. 1032 (1983).

[13] *Id.* at 1035 ("We hold that the protective search of the passenger compartment was reasonable under the principles articulated in *Terry*.").

[14] *United States v. Dennison*, 410 F.3d 1203, 1210 (10th Cir. 2005) (citing *Michigan v. Long*, 463 U.S. 1032, 1036 (1983)).

[15] *Long*, 463 U.S. at 1049.

[16] *United States v. Palmer*, 360 F.3d 1243, 1248 (10th Cir. 2004).

[17] *Arizona v. Gant*, 556 U.S. 332, 352 (2009) (Scalia, J., concurring).

-4-

incident to arrest, a protective sweep of a vehicle may be conducted even when the suspect is not in reaching-distance of the area at the time of the search.[18]

Although the officers searched Alexander's vehicle without a warrant, the Court concludes that the protective sweep exception applies. Considering the totality of circumstances, the officers had a reasonable and articulable suspicion that Alexander was dangerous and could potentially gain access to a weapon in the car. Henry knew that Alexander was a convicted felon who had a record of unlawfully possessing firearms. Henry also knew that Alexander had been violent in the past. These facts supported the officers' reasonable suspicion that Alexander was potentially dangerous.

The officers also reasonably suspected that Alexander could gain access to a weapon in the car. "[A] protective sweep of a vehicle may be conducted even when the suspect is not in reaching distance of the area at the time of the search."[19] Even though Henry escorted Alexander from the vehicle and supervised him as he sat on the curb, Alexander could have regained access to weapons in the car after being released from the temporary detention of the traffic stop. Under the totality of the circumstances, Thompson was justified in performing a protective sweep of the car.

The Court concludes that Alexander's Fourth Amendment rights were not violated. Henry and Thompson reasonably suspected that Alexander was dangerous and could gain immediate access to a weapon in the car. As such, the protective sweep exception to the warrant requirement applies in this case. The Court will not suppress the fruits of that search—the firearm found in Alexander's pocket.[20]

---

[18] *Id.* ("The rule of *Michigan v. Long* is not at issue here.").

[19] *Id.*

[20] Alexander also asked the court to suppress the statements he made to Henry after his arrest. "Alexander did not rely on *Miranda* or the Fifth Amendment in his initial motion. He argued that a violation of the Fourth

**IT IS THEREFORE ORDERED** that Defendant Matthew Alexander III's Motion to Suppress (Doc. 17) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 14th day of November, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

Amendment tainted his subsequent statements and his statements should be inadmissible by operation of the exclusionary rule." Doc. 29 at 8. As a result, the Court will not suppress any statements that Alexander made after his arrest.