IN THE UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | District Court |
| Plaintiff, | ) | Case No. |
| v. | ) | 19-10102 |
| | ) | |
| MATTHEW ALEXANDER, III, | ) | Circuit Court |
| | ) | Case No. |
| Defendant. | ) | 20-3238 |

TRANSCRIPT OF PROCEEDINGS

On the 30th day of November, 2020, came on to be heard proceedings in the above-entitled and numbered cause before the HONORABLE ERIC F. MELGREN, Judge of the United States District Court for the District of Kansas, sitting in Wichita, commencing at 3:03 P.M. Proceedings recorded by machine shorthand.  Transcript produced by computer-aided transcription.

APPEARANCES:

The plaintiff appeared by and through:
        Mr. Alan Metzger (via Zoom)
        United States Attorney's Office
        1200 Epic Center
        301 North Main
        Wichita, Kansas 67202

The defendant appeared via Zoom and by and through:
        Mr. Mitch E. Biebighauser (via Zoom)
        Federal Public Defender's Office
        850 Epic Center
        301 North Main Street
        Wichita, Kansas 67202

Also present:
        Mr. Jeff Blessant, USPO (via Zoom)

| | | |
|---|---|---|
| 15:00:48 | 1 | THE COURT:  This is the case of the United States |
| 15:03:19 | 2 | v. Matthew Alexander III, Case No. 19-10102.  The |
| 15:03:24 | 3 | United States appears by Assistant United States Attorney |
| 15:03:26 | 4 | Alan Metzger.  The defendant appears in person and by his |
| 15:03:31 | 5 | counsel Assistant Federal Public Defender Mitch |
| 15:03:32 | 6 | Biebighauser.  All appearances, including those of the |
| 15:03:36 | 7 | Court, are, in fact, by video. |
| 15:03:38 | 8 | For the record, first of all, sir, are you Matthew |
| 15:03:42 | 9 | Alexander III? |
| 15:03:43 | 10 | THE DEFENDANT:  Yes, sir. |
| 15:03:44 | 11 | THE COURT:  And, Mr. Alexander, since you |
| 15:03:47 | 12 | responded to my question, I'm assuming you can hear me. |
| 15:03:50 | 13 | And a few other people have spoken as we were getting |
| 15:03:54 | 14 | ready to start this video hearing, and you've been able |
| 15:03:57 | 15 | to hear them as well? |
| 15:03:58 | 16 | THE DEFENDANT:  Yes, sir. |
| 15:03:58 | 17 | THE COURT:  Well, it's important that you continue |
| 15:04:01 | 18 | to be able to hear everyone throughout this hearing |
| 15:04:03 | 19 | today, so if at any point -- obviously, if you disappear |
| 15:04:08 | 20 | from our screen we'll know that, but if you suddenly stop |
| 15:04:12 | 21 | hearing us, wave your hand or something to let us know. |
| 15:04:14 | 22 | We want to be sure that you can continue to hear |
| 15:04:18 | 23 | everything that's said during this hearing as we go |
| 15:04:21 | 24 | along. |
| 15:04:22 | 25 | There was filed last week in the docket on this |

11-30-20   USA v. ALEXANDER   No. 19-10102          3

| | | |
|---|---|---|
| 15:04:26 | 1 | case a consent to appear by video teleconference that was |
| 15:04:31 | 2 | signed either by you or by your attorney in your behalf. |
| 15:04:37 | 3 | Are you familiar with this consent form that's been |
| 15:04:39 | 4 | signed? |
| 15:04:40 | 5 | THE DEFENDANT:  Yes, sir. |
| 15:04:41 | 6 | THE COURT:  And just to be clear on the record, |
| 15:04:43 | 7 | did you sign that yourself or did you authorize |
| 15:04:46 | 8 | Mr. Biebighauser to sign that? |
| 15:04:48 | 9 | THE DEFENDANT:  I authorized him to sign it. |
| 15:04:49 | 10 | THE COURT:  Very well.  Well, according to this |
| 15:04:51 | 11 | consent, it says you agree to appear by video conference |
| 15:04:56 | 12 | for the sentencing.  And I just want you to understand at |
| 15:04:59 | 13 | the outset here that if you want to be present in court |
| 15:05:05 | 14 | for this [inaudible], we could do that.  I don't know if |
| 15:05:08 | 15 | we could do it in the next couple of weeks, given the |
| 15:05:11 | 16 | status of the infection, which, of course, is everywhere, |
| 15:05:14 | 17 | and that's why we're doing this.  But I want to be sure |
| 15:05:17 | 18 | that you understood that you had the right to be present |
| 15:05:20 | 19 | in person.  You don't have to do this by video |
| 15:05:23 | 20 | conference.  Do you understand that? |
| 15:05:24 | 21 | THE DEFENDANT:  Yes, sir. |
| 15:05:26 | 22 | THE COURT:  And are you agreeable to proceed via |
| 15:05:29 | 23 | video conference? |
| 15:05:30 | 24 | THE DEFENDANT:  Yes, sir. |
| 15:05:30 | 25 | THE COURT:  All right.  Very well.  Well, thank |

| | | |
|---|---|---|
| 15:05:33 | 1 | you, Mr. Alexander. |
| 15:05:33 | 2 | As I indicated, we're here because this is the |
| 15:05:35 | 3 | time that's been set for your sentencing.  We've come to |
| 15:05:38 | 4 | this point because the United States Probation Office has |
| 15:05:41 | 5 | prepared a background presentence investigation report |
| 15:05:44 | 6 | for our use at this hearing.  Have you had an opportunity |
| 15:05:48 | 7 | to go through that presentence investigation report with |
| 15:05:51 | 8 | your attorney and discuss it with him? |
| 15:05:53 | 9 | THE DEFENDANT:  Yes, sir. |
| 15:05:54 | 10 | THE COURT:  Mr. Biebighauser, you filed two |
| 15:05:58 | 11 | objections to that report that I want to take up first, |
| 15:06:03 | 12 | although I'm not sure that either impact the calculation |
| 15:06:06 | 13 | of the sentencing guidelines.  Nevertheless, let's start |
| 15:06:09 | 14 | there. |
| 15:06:09 | 15 | Your first objection requested something to be |
| 15:06:12 | 16 | removed from paragraph 32, although I think it's really |
| 15:06:16 | 17 | paragraph 33 as I look at the report, unless I'm |
| 15:06:22 | 18 | mistaken.  Yeah, my paragraph 32 simply says "None."  So |
| 15:06:29 | 19 | in paragraph 33 you're asked that the statement be |
| 15:06:33 | 20 | removed that says, "The police interviewed |
| 15:06:36 | 21 | Mr. Alexander" -- that would be I assume this |
| 15:06:38 | 22 | Mr. Alexander -- "and he admitted to stealing the |
| 15:06:40 | 23 | marijuana from his father as his father sells marijuana." |
| 15:06:45 | 24 | You note that that statement is unlikely to have |
| 15:06:49 | 25 | any effect on the sentence that he receives, and you're |

| | | |
|---|---|---|
| 15:06:52 | 1 | afraid that it inculpates his father in criminal conduct; |
| 15:06:56 | 2 | therefore, you asked that it be removed. |
| 15:06:58 | 3 | Anything else you'd like to say with respect to |
| 15:07:02 | 4 | this request, sir? |
| 15:07:03 | 5 | MR. BIEBIGHAUSER:  No, Judge, only to make it a |
| 15:07:06 | 6 | bit clearer.  I think I followed up with Mr. Blessant and |
| 15:07:09 | 7 | Mr. Metzger.  The request is just the last phrase, "as |
| 15:07:11 | 8 | his father sells marijuana," is the only portion of our |
| 15:07:14 | 9 | objection for the reasons we noted. |
| 15:07:18 | 10 | THE COURT:  All right.  Mr. Metzger, any response? |
| 15:07:21 | 11 | MR. METZGER:  No, Your Honor. |
| 15:07:27 | 12 | THE COURT:  So I don't know -- I mean, this |
| 15:07:31 | 13 | report, first of all, state -- or deals with an event |
| 15:07:35 | 14 | that was ten years ago, more than ten years ago, in fact, |
| 15:07:38 | 15 | and so I don't know the likelihood of there being any |
| 15:07:41 | 16 | criminal implications on Mr. Alexander Sr. from that |
| 15:07:46 | 17 | response, or -- do I recall, is Mr. Alexander Sr. |
| 15:07:51 | 18 | currently -- my recollection is that he's either |
| 15:07:56 | 19 | currently incarcerated or incapacitated due to medical |
| 15:08:00 | 20 | issues.  Do you -- can you remind me what his status is? |
| 15:08:04 | 21 | Yes, sir, Mr. Alexander? |
| 15:08:06 | 22 | THE DEFENDANT:  I think y'all are kind of confused |
| 15:08:10 | 23 | about the whole point of why I didn't want that. |
| 15:08:13 | 24 | MR. BIEBIGHAUSER:  Yes, if I can clarify.  I can |
| 15:08:16 | 25 | clarify for you, Mr. Alexander. |

| | |
|---|---|
| 15:08:17 | 1 |
| 15:08:20 | 2 |
| 15:08:23 | 3 |
| 15:08:28 | 4 |
| 15:08:30 | 5 |
| 15:08:32 | 6 |
| 15:08:37 | 7 |
| 15:08:40 | 8 |
| 15:08:43 | 9 |
| 15:08:44 | 10 |
| 15:08:46 | 11 |
| 15:08:47 | 12 |
| 15:08:49 | 13 |
| 15:08:55 | 14 |
| 15:08:59 | 15 |
| 15:09:02 | 16 |
| 15:09:06 | 17 |
| 15:09:12 | 18 |
| 15:09:17 | 19 |
| 15:09:19 | 20 |
| 15:09:26 | 21 |
| 15:09:31 | 22 |
| 15:09:34 | 23 |
| 15:09:39 | 24 |
| 15:09:41 | 25 |

1       Judge, the objection is not that it would

2  inculpate his father.  Our concern isn't that his father

3  would be found guilty on the basis of this information.

4  Our concern is that the information suggests that

5  Mr. Alexander provided information against his father and

6  that he would be retaliated on in the Bureau of Prisons

7  if this information was somehow discovered because he

8  would be labeled a cooperator with the Government.  So

9  our objection --

10       [Simultaneous cross-talk.]

11       MR. BIEBIGHAUSER:  -- poses to Mr. Alexander.

12       THE COURT:  I did not understand that from the

13  objection.  Well, I think then, particularly as

14  Mr. Biebighauser has revised the allegation to only

15  request a deletion of the last five words in that

16  sentence, "as his father sells marijuana," I'm going to

17  grant that and ask that that statement be removed from

18  the report in the interests of the safety of

19  Mr. Alexander in the Bureau of Prisons facility.

20       Let's go on to the second objection, which is that

21  the defendant objects to the statement in the presentence

22  report that an upward departure may be warranted as

23  discussed in paragraphs 169 and 170.  The objection says

24  he'll elaborate on this report in his sentencing

25  memorandum.  And I think there's a distinction that needs

15:09:43  1   to be made here, Mr. Biebighauser, as to whether the

15:09:47  2   defendant may be subject to an upward departure or

15:09:49  3   variance, and whether he, in fact, will be subject to an

15:09:52  4   upward departure or variance.

15:09:53  5        The presentence investigation report itself, of

15:09:56  6   course, does not say that he will be, as the sentence to

15:10:02  7   be issued is going to be determined at this hearing.  It

15:10:04  8   merely states that he may be.  And your sentencing

15:10:07  9   memorandum, which I have read and discussed with the

15:10:10 10   probation office, sets forth the reasons why you don't

15:10:12 11   think he should be.  But given that, do you actually

15:10:17 12   object?  Do you have grounds to object, I guess I should

15:10:20 13   say, to the probation office's determination that, based

15:10:25 14   on the background of this defendant, he may be subject?

15:10:31 15        MR. BIEBIGHAUSER:  I think so, Judge, and I

15:10:32 16   understand your point and I think the distinction is that

15:10:37 17   Mr. Alexander's objection on that score is that the

15:10:42 18   grounds listed by the probation officer are not grounds

15:10:45 19   by which the Court could impose an upward departure, so

15:10:49 20   to the extent that the PSR notes that it may upward

15:10:53 21   depart, Mr. Alexander's objection is that it may not do

15:10:56 22   so on those grounds for the reasons I identified in my

15:10:59 23   sentencing memorandum.

15:11:04 24        THE COURT:  All right.  Mr. Metzger, do you have a

15:11:06 25   response to this?  I understand that you've made an

| | | |
|---|---|---|
| 15:11:09 | 1 | agreement under the plea agreement as to what your |
| 15:11:12 | 2 | recommendation on sentencing would be.  That's, again, a |
| 15:11:15 | 3 | slightly different issue than we're discussing here.  Do |
| 15:11:17 | 4 | you have a response to that? |
| 15:11:18 | 5 | MR. METZGER:  Your Honor, although I want to be |
| 15:11:23 | 6 | consistent and conform to the plea agreement, as I noted |
| 15:11:28 | 7 | in the Government's response, the -- if probation's |
| 15:11:36 | 8 | information to the Court is objective and supported by |
| 15:11:42 | 9 | the law and upward departures or variances, then I |
| 15:11:50 | 10 | believe that the probation report is accurate, that the |
| 15:11:54 | 11 | defendant may be subject to an upward departure, but the |
| 15:11:58 | 12 | United States is not requesting an upward departure and |
| 15:12:03 | 13 | will be making a request consistent with the plea |
| 15:12:06 | 14 | agreement. |
| 15:12:08 | 15 | THE COURT:  I understand. |
| 15:12:10 | 16 | Anything further, Mr. Biebighauser?  On this |
| 15:12:14 | 17 | objection? |
| 15:12:14 | 18 | MR. BIEBIGHAUSER:  No. |
| 15:12:18 | 19 | THE COURT:  Well, I've read, as I indicated, your |
| 15:12:21 | 20 | sentencing memorandum, which is a fairly well-crafted |
| 15:12:27 | 21 | argument as to how the guidelines should be applied.  And |
| 15:12:31 | 22 | I interpret your memorandum to indicate that the basis by |
| 15:12:37 | 23 | which an upward departure may be calculated as suggested |
| 15:12:42 | 24 | by the probation office is different than how you think |
| 15:12:44 | 25 | it may be, but I think the simple statement that the |

15:12:47   1   defendant may be subject to an upward departure -- and

15:12:51   2   I'll note that the PSIR does not say "upward departure or

15:12:56   3   variance"; it does simply say "departure."  And that's, I

15:12:58   4   think, critical or central to your objection.

15:13:01   5   Nevertheless, I think that statement itself is not

15:13:04   6   legally or factually incorrect, so I'm going to overrule

15:13:09   7   the second objection.  Again, what sentence is to be

15:13:14   8   determined is to be set forth at this hearing.  But I

15:13:19   9   don't think the sentence is legally erroneous and I am

15:13:21   10   going to overrule the objection, the second objection to

15:13:24   11   the report.

15:13:24   12        Those are the only objections that the probation

15:13:27   13   office was aware of which I was informed.  Are there any

15:13:30   14   other objections to the presentence report?

15:13:33   15        MR. METZGER:  None by the United States, Your

15:13:37   16   Honor.

15:13:37   17        MR. BIEBIGHAUSER:  No, Your Honor.

15:13:38   18        THE COURT:  Pursuant to the presentence

15:13:42   19   investigation report then, Mr. Alexander presents to this

15:13:45   20   court, following his conviction by plea to the count of

15:13:48   21   possession of a firearm by a prohibited person, he

15:13:52   22   presents at offense level 17, criminal history category

15:13:55   23   VI.  He has, in fact, 21 criminal history points, which

15:14:04   24   is half again as many as necessary to establish category

15:14:08   25   VI, but VI is as high as we go.

15:14:12   1       For that presentation the guidelines would

15:14:15   2   recommend a sentence of 51 to 63 months, to be followed

15:14:19   3   by one to three years of supervised release.

15:14:21   4       Let me hear statements from counsel as to your

15:14:26   5   recommendations as to disposition.  Mr. Metzger?

15:14:28   6       MR. METZGER:  Your Honor, the United States is

15:14:32   7   requesting a sentence at the low end of the guidelines of

15:14:34   8   51 months.  The United States believes that the defendant

15:14:39   9   is -- should be incarcerated to a term of 51 months, and

15:14:45   10  that that term is warranted by the defendant's

15:14:50   11  preexisting criminal history, as well as the problems

15:14:57   12  that he had once he got out on probation or parole.  But,

15:15:04   13  again, those -- the defendant's criminal history warrants

15:15:09   14  incarceration, but the United States is requesting a

15:15:12   15  sentence of 51 months.

15:15:15   16      THE COURT:  And term of supervised release?

15:15:17   17      MR. METZGER:  And a term of supervised release.

15:15:20   18  The term of supervised release is one to three months --

15:15:24   19  is one to three years.  The United States -- we did not

15:15:27   20  specifically discuss a term of probation, but since we

15:15:35   21  recommend -- since the agreement was for the low end, I

15:15:39   22  think the United States probably needs to make a request

15:15:43   23  of probation at the low end as well, which would be one

15:15:45   24  year.

15:15:46   25      THE COURT:  You're saying probation, but you mean

15:15:48   1   supervised release.

15:15:49   2       MR. METZGER:  Yes, I'm sorry, supervised release.

15:15:51   3       THE COURT:  All right.  Thank you, Mr. Metzger.

15:15:52   4       Mr. Biebighauser?

15:15:55   5       MR. BIEBIGHAUSER:  Thank you, Your Honor.

15:15:59   6   Mr. Alexander's requesting a sentence of 51 months, a

15:16:01   7   within guideline sentence, the low end of the guideline

15:16:05   8   sentence.  [Inaudible] is already incorporating

15:16:07   9   Mr. Alexander's criminal history, the nature of his

15:16:09  10   conduct, and the type -- not -- I should say the kind,

15:16:13  11   not just the quantity of his criminal history.

15:16:15  12       So the guideline's properly calculated and takes

15:16:19  13   into account already the types of things that the Court

15:16:23  14   should consider when fashioning a sentence under 3553(a).

15:16:28  15   The first is the nature and circumstances of the offense

15:16:31  16   and the history and characteristics of the defendant.

15:16:34  17   Here, the nature and circumstances of the offense are

15:16:36  18   quite plain.  Mr. Alexander was stopped for an unrelated

15:16:41  19   traffic violation, his vehicle was searched, and a

15:16:43  20   firearm was found.  The offense included no threats, no

15:16:47  21   use of violence, or no brandishing of the firearm

15:16:50  22   whatsoever.  And so the facts of the offense, the nature

15:16:53  23   and circumstances, are quite plain.

15:16:54  24       The characteristics of the defendant are important

15:16:57  25   for the Court to consider.  But the guideline range has

15:17:02   1   already considered not only quantity but the kind, and so

15:17:04   2   no sentence outside of the guidelines is appropriate in

15:17:08   3   this case.

15:17:08   4        We can tell that first because Mr. Alexander is

15:17:12   5   criminal history category VI.  As the Court pointed out,

15:17:14   6   the guideline range doesn't go higher than that.  He's

15:17:17   7   receiving the highest possible guideline enhancement for

15:17:20   8   the length or the amount of his criminal history.  But

15:17:23   9   then also, the guidelines have taken into consideration

15:17:25   10  the kind of criminal history.

15:17:27   11       Mr. Alexander's level starts at a 20.  This is

15:17:31   12  discussed at paragraph 22 of the presentence violation

15:17:34   13  report.  There, because he starts as a base offense level

15:17:37   14  of 20, because one of his prior convictions is a violent

15:17:41   15  felony, aggravated battery, and so the guideline range

15:17:44   16  and the sentence at 51 months already incorporates the

15:17:49   17  kind and quantity of criminal history.  So the Court is

15:17:52   18  to consider the seriousness of the offense, to promote

15:17:54   19  respect for the law, and to provide just punishment for

15:17:57   20  the offense.  Here, the seriousness of the offense, for

15:18:00   21  the very sense it's plain, is low.  Certainly possessing

15:18:04   22  a firearm is concerning, it's something that the Court

15:18:06   23  should be mindful of and society should be mindful of.

15:18:09   24  But not only was it not brandished or threatened at the

15:18:11   25  time of the offense, there's no evidence it was otherwise

| | | |
|---|---|---|
| 15:18:14 | 1 | used whatsoever. |
| 15:18:14 | 2 | The Court can promote respect for the law and |
| 15:18:17 | 3 | provide just punishment for the offense by sentencing |
| 15:18:20 | 4 | within the guidelines.  Society at this point respects |
| 15:18:23 | 5 | and appreciates the sentencing guidelines and understands |
| 15:18:26 | 6 | that they're there for a reason.  That's what the |
| 15:18:28 | 7 | defendant is asking for.  A sentence of 51 months affords |
| 15:18:32 | 8 | adequate deterrence for criminal conduct because here it |
| 15:18:36 | 9 | includes a sentence of imprisonment.  Here a sentence of |
| 15:18:39 | 10 | 51 months or any sentence within the guidelines, for that |
| 15:18:42 | 11 | matter, is nearly five years of Mr. Alexander's life.  In |
| 15:18:46 | 12 | that sentence the Court will be protected from further |
| 15:18:49 | 13 | crimes of the defendant not only because he'll be |
| 15:18:51 | 14 | incapacitated for the next 51 months but also because it |
| 15:18:55 | 15 | will deter his future conduct. |
| 15:18:56 | 16 | And, finally, to provide the defendant with |
| 15:19:00 | 17 | educational and vocational training -- he doesn't need |
| 15:19:02 | 18 | medical care in this case -- and correctional treatment |
| 15:19:04 | 19 | in an effective manner is accomplished by a sentence of |
| 15:19:07 | 20 | 51 months.  While in the Bureau of Prisons during that |
| 15:19:10 | 21 | time, Mr. Alexander will be able to participate in a |
| 15:19:13 | 22 | numerous amount of BOP programs and he'll be incentivized |
| 15:19:17 | 23 | to do so, not only through programs that the Court's |
| 15:19:20 | 24 | familiar with like the RDAP but emerging and evolving |
| 15:19:24 | 25 | programs that have been fashioned through the First Step |

15:19:26   1   Act.  And so there are new programs available that are

15:19:30   2   now through Bureau of Prisons that this sentence will

15:19:32   3   accomplish.

15:19:32   4        For those reasons, a sentence of 51 months of

15:19:35   5   custody is appropriate, because it's recommended by the

15:19:38   6   guidelines and because it fits within the facts set forth

15:19:41   7   by 3553(a).  The court would no doubt then want to

15:19:45   8   fashion some term of supervised release.  And we would

15:19:47   9   concur with the Government's recommendation on that term.

15:19:51   10       I believe that's all I have, but Mr. Alexander had

15:19:53   11   intended to write a letter to the court.  I was informed

15:19:55   12   by your chambers staff, Judge, that that had not been

15:19:59   13   received by the Court as of yet and so he'd like to make

15:20:02   14   the comments orally in lieu of the court now receiving

15:20:04   15   his letter.

15:20:05   16       THE COURT:  Sir, Mr. Alexander, I always provide

15:20:07   17   the defendant an opportunity to make any statement they

15:20:09   18   might wish to make -- they don't have to, but they might

15:20:12   19   wish to make at sentencing for my consideration.  As

15:20:15   20   Mr. Biebighauser just noted, I was unaware that you were

15:20:18   21   intending to send me a letter, and regrettably, I did not

15:20:21   22   receive that letter prior to today's hearing.  So I'll be

15:20:24   23   happy to hear anything you would like to say to me, both

15:20:28   24   that might have been contained in the letter or

15:20:31   25   otherwise, before I fashion a tentative sentence in this

15:20:33   1   case.

15:20:36   2        THE DEFENDANT:  I just want to say I'm not going

15:20:39   3   to sit here and act like I've been perfect.  I've had a

15:20:44   4   rough life.  I've made some bad decisions, and I take

15:20:47   5   full responsibility for what I've done.  I'd like to note

15:20:52   6   that it's a lot of stuff in my PSI -- like I been to

15:20:57   7   prison twice, both times -- one was an accident.  I shot

15:21:00   8   myself.  Bullet went through my leg.  It hit my friend.

15:21:04   9   That was the agg. battery and criminal possession.  I

15:21:07   10  wasn't intending on hurting nobody.  It was an accident.

15:21:10   11  The second time, gun was shot in the air, nobody was

15:21:13   12  hurt, just fooling around.  I went to prison.

15:21:17   13        I'm not -- I have been a violent person, but both

15:21:20   14  times I was sent to prison were for crap, me being the

15:21:25   15  dumb kid, running around being reckless.  I'd like to say

15:21:30   16  this has been, out of all the time I've been in my life,

15:21:33   17  has been the worst ever.  My five-year-old son has been

15:21:36   18  molested.  He gets in trouble in school.  I asked him why

15:21:40   19  he gets in trouble in school.  He told me because he

15:21:43   20  wants to come to jail and be with me 'cause he know I'll

15:21:46   21  keep him safe, and that's the worst thing I've ever heard

15:21:49   22  or been through in my life.

15:21:51   23        I just want to get out and be a father to my kids

15:21:55   24  and be there.  Like I said, I take responsibility for my

15:21:59   25  actions.  I apologize to society.  I apologize to you for

15:22:03    1   having to pass judgment on my life and put me in prison.

15:22:06    2   I just want to say that.  And thank you and whatever

15:22:09    3   decision you make, thank you, I appreciate it.

15:22:12    4          Thank you, Mitch.  Thank you, everybody.  That's

15:22:14    5   it.

15:22:14    6          THE COURT:  Thank you very much, Mr. Alexander,

15:22:16    7   for your remarks.

15:22:18    8          Well, as I noted, Mr. Alexander presents at

15:22:21    9   offense level 17, criminal history category VI.  In

15:22:24   10   fashioning a sentence in these cases, the court is

15:22:26   11   required to consider not only the guidelines, which are

15:22:29   12   advisory.  I don't have to follow them.  I have to

15:22:32   13   consider them, but also to consider the factors that are

15:22:34   14   set forth in 18 United States Code § 3553(a).  And

15:22:40   15   Mr. Biebighauser ably reviewed those factors in his

15:22:43   16   comments to the Court.

15:22:45   17          I think it's fair to say that I have spent more

15:22:48   18   time than average on this case in contemplating what I

15:22:53   19   should do with it, and because of that I think I -- I

15:22:57   20   think it's only appropriate that I spend more time than

15:22:59   21   average in determining and explaining my sentence in this

15:23:03   22   case.

15:23:04   23          Although Mr. Biebighauser reviewed the factors

15:23:07   24   quite ably and professionally, I would have to say that

15:23:12   25   my assessment probably differs somewhat from what he

| | | |
|---|---|---|
| 15:23:19 | 1 | said.  I will start with the seriousness of the offense, |
| 15:23:23 | 2 | possession of a firearm.  And Mr. Biebighauser correctly |
| 15:23:26 | 3 | noted that it was merely possession.  He did not brandish |
| 15:23:30 | 4 | it, he did not discharge it, he did not otherwise in the |
| 15:23:34 | 5 | event of this particular arrest do something violent, and |
| 15:23:38 | 6 | so counsel suggested that the seriousness of that offense |
| 15:23:42 | 7 | under this factor is -- certainly did not say, did not |
| 15:23:48 | 8 | suggest insignificant but lower than it might otherwise |
| 15:23:50 | 9 | be. |
| 15:23:50 | 10 | Although I agree with the facts of the arrest, |
| 15:23:54 | 11 | essentially, as counsel noted them, I don't agree with |
| 15:23:57 | 12 | that conclusion, and I don't for reasons that I'll |
| 15:23:59 | 13 | explain as I go forward in my analysis here.  But simply |
| 15:24:03 | 14 | put at this point, I'll note that I did agree with him |
| 15:24:05 | 15 | because Mr. Alexander has a long history of violent |
| 15:24:10 | 16 | offenses.  And for someone who has a long history of |
| 15:24:13 | 17 | violent offenses, the mere possession of a firearm is an |
| 15:24:18 | 18 | invitation to trouble.  And, indeed, that is why the |
| 15:24:21 | 19 | Congress indicated that someone who has a prior |
| 15:24:23 | 20 | conviction has lost their right to possess a firearm |
| 15:24:27 | 21 | because those individuals are deemed to be more likely to |
| 15:24:32 | 22 | commit violent, dangerous or criminal activities with a |
| 15:24:35 | 23 | firearm than is someone else.  That is true in general |
| 15:24:38 | 24 | and it is true specifically, as I will discuss shortly, |
| 15:24:42 | 25 | in Mr. Alexander's case, and, therefore, I looked at the |

15:24:47   1   seriousness of this offense I guess somewhat differently

15:24:50   2   than counsel did.

15:24:53   3       The next category is history and characteristics

15:24:58   4   of the defendant, and then it says for me to protect the

15:25:03   5   public from further offenses of the defendant, and here's

15:25:05   6   where I want to spend some time.  It struck me, and I

15:25:08   7   noted this briefly at the outset of this hearing, that --

15:25:12   8   well, first of all, that Mr. Alexander's criminal history

15:25:15   9   category VI, which is the highest category that you can

15:25:19   10  obtain under the sentencing guidelines.  And I think

15:25:22   11  category VI, frankly, understates Mr. Alexander's

15:25:26   12  criminal history.

15:25:27   13      And part of that's because he has 21 criminal

15:25:31   14  history points, which, as I noted, is really half again

15:25:34   15  as many points as needed to get to category VI.  And I

15:25:38   16  will note, moreover, that he obtained those points in

15:25:41   17  about 25 years of life.  I certainly have seen

15:25:47   18  individuals who had 20 or more criminal history points,

15:25:50   19  but -- well, let me just say it's unusual to see someone

15:25:55   20  who has achieved that designation so quickly or so early.

15:26:00   21  It's not unprecedented.  I wouldn't say I've not seen it

15:26:03   22  before.  But it's unusual, it's noteworthy and, frankly,

15:26:07   23  it's concerning.

15:26:08   24      But even that, I think, understates the

15:26:11   25  seriousness of the criminal history, for reasons I want

15:26:13   1   to discuss in some detail.  And that comes from looking

15:26:17   2   through Mr. Alexander's criminal history.  And I start at

15:26:21   3   2010.  I'll note that he was a minor at that point, and

15:26:24   4   we normally do not consider offenses when one's a minor,

15:26:27   5   but this was only ten years ago, and for reasons I will

15:26:32   6   explain, I think it's appropriate to begin so in this

15:26:35   7   case.

15:26:35   8        In this offense Mr. Alexander was charged with

15:26:39   9   criminal threat.  This came when he grabbed his

15:26:43   10  girlfriend around her throat with both hands and said he

15:26:46   11  was going to kill her, pushed her to the ground and

15:26:49   12  struck her several times in the face, and several times

15:26:52   13  in the stomach, which is significant because she was

15:26:54   14  three months pregnant.

15:26:56   15       The next year, in 2011, he was convicted of

15:27:02   16  aggravated battery and criminal possession of a firearm

15:27:04   17  by a convicted felon.  In that case someone called the

15:27:09   18  police to report that she'd been shot by Mr. Alexander,

15:27:12   19  although, as noted earlier, that may have been an

15:27:17   20  accidental shooting, but certainly his use of a gun and

15:27:20   21  his discharge was still sufficient to support a

15:27:24   22  conviction.

15:27:25   23       The next year, in 2012, he was convicted of

15:27:29   24  domestic battery.  Again, he had grabbed a girlfriend out

15:27:33   25  of the car by the back of her neck and pulled her out of

| | | |
|---|---|---|
| 15:27:36 | 1 | the car and threatened her. |
| 15:27:38 | 2 | Also in 2012, he was convicted of a separate |
| 15:27:41 | 3 | offense of domestic battery.  In this case he had pushed |
| 15:27:46 | 4 | a girlfriend up against the wall and accused her of |
| 15:27:49 | 5 | telling lies about him.  So he had two violent offenses |
| 15:27:54 | 6 | in 2012. |
| 15:27:55 | 7 | There were no convictions in 2013 of this nature. |
| 15:28:00 | 8 | But in 2014, Mr. Alexander was convicted of disorderly |
| 15:28:06 | 9 | conduct for leaving threatening messages to his |
| 15:28:09 | 10 | girlfriend such that she reported that she was in fear of |
| 15:28:12 | 11 | her life. |
| 15:28:14 | 12 | No offenses in 2014, but in 2015 he was again |
| 15:28:18 | 13 | convicted of criminal discharge of a firearm.  This is a |
| 15:28:23 | 14 | firearm -- this is a situation where a firearm was fired |
| 15:28:27 | 15 | into a residence, where he threatened a couple of |
| 15:28:31 | 16 | individuals, where he admitted later that he had done the |
| 15:28:33 | 17 | drive-by, that he would do it again.  As the police were |
| 15:28:38 | 18 | trying to apprehend him in that case, he started away |
| 15:28:41 | 19 | from them, ran a stop sign, almost struck two vehicles. |
| 15:28:45 | 20 | Finally, when the vehicle came to a stop, he exited the |
| 15:28:48 | 21 | vehicle and fled on foot until he was apprehended.  That |
| 15:28:52 | 22 | was an offense in 2015.  As I noted there were none in |
| 15:28:55 | 23 | 2014.  But there were three offenses in 2015, that being |
| 15:28:59 | 24 | the first one. |
| 15:29:00 | 25 | The second was a battery offense.  And it's |

15:29:03  1  noteworthy that during his arrest for that he again

15:29:06  2  pushed away from the officers during handcuffing and

15:29:08  3  tried to flee.

15:29:09  4       And the third offense in 2015 was promoting the

15:29:12  5  sale of sexual relations, where he asked his girlfriend

15:29:16  6  to prostitute herself for him in order to raise his bail.

15:29:20  7       There was a fourth offense in 2015 which I'm

15:29:23  8  really not considering.  It's a misdemeanor violation.

15:29:25  9       There were no offenses in 2016, but in 2017 he was

15:29:30  10  convicted of a cocaine offense.

15:29:32  11       In 2018, yet another felony domestic battery

15:29:37  12  against a significant other who he punched three or four

15:29:39  13  times in the face with a closed fist and threatened to

15:29:44  14  kill her.

15:29:44  15       And then in 2019 he was arrested for this offense.

15:29:47  16       So over the last ten years, with only two- or

15:29:51  17  three-year exceptions, he's committed not just offenses

15:29:54  18  but violent offenses almost every year and sometimes more

15:29:59  19  than one a year.  This is why I do not consider the

15:30:03  20  possession of a firearm offense to not be other than a

15:30:07  21  serious offense.

15:30:08  22       So the history and characteristics of the

15:30:11  23  defendant are greatly concerning to me.  And one of the

15:30:13  24  factors I'm required to consider under 3553(a) is the

15:30:17  25  necessity to protect the public from further offenses of

| | | |
|---|---|---|
| 15:30:20 | 1 | the defendant.  Again, as noted, he's now 26 years old, |
| 15:30:25 | 2 | but in only 25 years of life, since he's been |
| 15:30:29 | 3 | incarcerated, I think, for about a year, he has assembled |
| 15:30:33 | 4 | a startling array of violent offenses against others. |
| 15:30:39 | 5 | And this is a concern that I am required by the law to |
| 15:30:42 | 6 | consider in protecting the public against further |
| 15:30:45 | 7 | offenses by the defendant. |
| 15:30:47 | 8 | And, finally, the statute requires that I fashion |
| 15:30:50 | 9 | a sentence that will promote respect for the law and |
| 15:30:52 | 10 | provide just punishment.  I am particularly concerned |
| 15:30:56 | 11 | that, despite an array of prior convictions of |
| 15:31:01 | 12 | Mr. Alexander, not all of which have sent him to prison, |
| 15:31:05 | 13 | as he himself noted, and that may be a topic for a |
| 15:31:07 | 14 | different day, but nevertheless it's obvious that |
| 15:31:11 | 15 | convictions and a few incarcerations have not been |
| 15:31:14 | 16 | sufficient to promote respect for the law. |
| 15:31:17 | 17 | Based on all these factors, I agree with the |
| 15:31:21 | 18 | presentence investigation report that an above-guideline |
| 15:31:25 | 19 | sentence is appropriate.  I suppose I'm not hinging this |
| 15:31:30 | 20 | sentence specifically to the guidelines, so it may be |
| 15:31:33 | 21 | constituted more in the nature of a variance, although, |
| 15:31:37 | 22 | frankly, I'm in disagreement -- I mean, I'm in agreement |
| 15:31:40 | 23 | with the probation office's response to the second |
| 15:31:44 | 24 | objection as to how an above-guideline sentence could be |
| 15:31:50 | 25 | fashioned, and that determination has impacted me. |

15:31:59   1        In light of these factors, I think that a sentence

15:32:02   2   of incarceration of 78 months is appropriate for

15:32:07   3   Mr. Alexander.  I think it's sufficient and not greater

15:32:11   4   than necessary to promote respect for the law and provide

15:32:13   5   just punishment and to protect the public from further

15:32:17   6   offenses.  I think it's a sentence that reflects my

15:32:20   7   obligation, as I've sat forth in some detail, primarily

15:32:25   8   under 18 United States Code § 3553(a) [technical

15:32:31   9   difficulties] objectives and the criteria that I'm

15:32:33  10   required to consider in fashioning a sentence.

15:32:35  11        Following that term of incarceration, I intend to

15:32:38  12   place Mr. Alexander on three years of supervised release.

15:32:41  13   I am hopeful that a lengthy period of incarceration,

15:32:45  14   which I understand he's not heretofore had, coupled with

15:32:48  15   a long term of supervision, will be helpful in setting

15:32:55  16   him on a different course than he has been in his young

15:32:58  17   life so far, but I think that the maximum term of

15:33:02  18   supervision allowed by law, which is three years, is

15:33:05  19   merited fully in this case to achieve those objectives.

15:33:08  20        While he's on supervision, I intend to set forth

15:33:12  21   the mandatory and special conditions of supervision that

15:33:15  22   are set forth in the presentence report, as well as the

15:33:19  23   following special conditions:  given his long history of

15:33:24  24   violent offenses and the fact that this conviction of

15:33:27  25   possession of a firearm is connected to those, I think

15:33:30  1   his participation in a cognitive behavioral program,

15:33:34  2   which may include moral reconation therapy, is fully

15:33:38  3   merited, and I'm going to impose that condition upon him.

15:33:41  4        I think participation in a substance abuse program

15:33:45  5   is appropriate, given the fact that controlled substances

15:33:48  6   have obviously played some role in his, I think, long

15:33:53  7   history of violent offenses.  And I'm also,

15:33:56  8   Mr. Alexander, going to require you to abstain from

15:33:58  9   alcohol during the term of your supervised release, as

15:34:01  10  alcohol consumption is inconsistent with a controlled

15:34:07  11  substance treatment program.

15:34:08  12        I'm further going to require a condition of mental

15:34:12  13  health treatment and ordering him to receive counseling

15:34:15  14  as a part of that and to follow any needed medical care

15:34:18  15  that may be prescribed as a result of this mental health

15:34:23  16  treatment.

15:34:23  17        I'm going to direct that that mental health

15:34:25  18  treatment include, if it does not already, some anger

15:34:29  19  management provision, as obviously his long history of

15:34:33  20  offenses which I just reviewed shows a history of anger

15:34:38  21  against other people in a way that's physically

15:34:40  22  threatening and maybe even life threatening.

15:34:44  23        Because he has had some association with street

15:34:47  24  gangs, I'm imposing the condition of prohibiting his

15:34:50  25  contact and association with gang members.  And I'm also

| | | |
|---|---|---|
| 15:34:54 | 1 | ordering the condition that he comply with any |
| 15:34:57 | 2 | state-ordered child support obligations that may be |
| 15:35:00 | 3 | imposed. |
| 15:35:00 | 4 | I see that I skipped one necessary thing with |
| 15:35:04 | 5 | respect to substance abuse treatment program.  I'm |
| 15:35:05 | 6 | authorizing the probation office to impose up to eight |
| 15:35:08 | 7 | drug tests per month or fewer as they deem appropriate |
| 15:35:14 | 8 | but not in excess of that as that's a new requirement |
| 15:35:18 | 9 | that the law has indicated that we need to impose. |
| 15:35:22 | 10 | Obviously Mr. Alexander is in custody.  He'll |
| 15:35:26 | 11 | remain in the marshals' custody pending designation of |
| 15:35:29 | 12 | the Bureau of Prisons of an appropriate facility for him |
| 15:35:31 | 13 | to serve his sentence in. |
| 15:35:35 | 14 | He's obligated to pay a hundred-dollar special |
| 15:35:38 | 15 | assessment to the Crime Victims Fund, and that will be |
| 15:35:40 | 16 | imposed.  I'm not imposing any fine as he lacks the |
| 15:35:44 | 17 | ability to pay the fine. |
| 15:35:46 | 18 | So that is the tentative sentence of the court in |
| 15:35:49 | 19 | this case.  Are there objections to this sentence? |
| 15:35:52 | 20 | Mr. Metzger? |
| 15:35:52 | 21 | MR. METZGER:  None by the United States, Your |
| 15:35:55 | 22 | Honor. |
| 15:35:55 | 23 | THE COURT:  Mr. Biebighauser?  I'm sorry, |
| 15:35:58 | 24 | Mr. Biebighauser, you're on mute. |
| 15:35:59 | 25 | MR. BIEBIGHAUSER:  Yes, I had muted myself.  Yes, |

15:36:02   1   Your Honor, I do intend to object.  But Mr. Alexander had

15:36:05   2   been raising his hand during the Court's colloquy.  Maybe

15:36:08   3   he wants to speak with me before I make any objections.

15:36:10   4        Mr. Alexander, did you want to speak separately

15:36:13   5   before I raise any objections to the Court's sentence?

15:36:16   6        THE DEFENDANT:  As far as, I don't have a drug

15:36:18   7   problem.  I was just on 905 when I caught this case.  I

15:36:24   8   made all clean UA's.  I did an assessment for treatment.

15:36:28   9   Drugs is not an issue with my anger or me being

15:36:31   10  aggressive.  I'd like to note that.

15:36:33   11       THE COURT:  All right.  I'll note that,

15:36:35   12  Mr. Alexander.  And if, in fact, an initial treatment or

15:36:38   13  evaluation of you as you begin substance abuse -- I'm

15:36:41   14  sorry, as you begin supervised release indicates that you

15:36:43   15  do not need a substance abuse treatment program, then the

15:36:47   16  probation may recommend waiver of that condition to me.

15:36:50   17  That's not an unusual event.  And my assessment of this

15:36:56   18  indicated that I thought there was some controlled

15:37:00   19  substance offenses involved, and so I've imposed that

15:37:02   20  condition.  But if, in fact, it's deemed or determined

15:37:05   21  not to be necessary, then it can be submitted for waiver.

15:37:09   22       Having said that, though, we have a provision or a

15:37:12   23  procedure, and I didn't discuss this with you in advance,

15:37:14   24  where if you want we can put you and Mr. Biebighauser in

15:37:18   25  a separate virtual room, so to speak, where you can visit

| | | |
|---|---|---|
| 15:37:23 | 1 | with him privately outside of the hearing of the rest of |
| 15:37:25 | 2 | us.  Do you want to talk to him privately before |
| 15:37:28 | 3 | Mr. Biebighauser makes any further responses to my |
| 15:37:30 | 4 | tentative sentence? |
| 15:37:33 | 5 | THE DEFENDANT:  Yes. |
| 15:37:34 | 6 | THE COURT:  Ms. McKee, can we put them in a |
| 15:37:36 | 7 | separate room, please. |
| 15:37:50 | 8 | (Off-the-record discussion between |
| 15:37:52 | 9 | Mr. Biebighauser and the defendant in a breakout room.) |
| 15:42:51 | 10 | THE DEFENDANT:  Can you hear me? |
| 15:42:54 | 11 | THE COURT:  Yes, we can hear you. |
| 15:42:55 | 12 | Mr. Biebighauser? |
| 15:42:55 | 13 | MR. BIEBIGHAUSER:  And, Judge, I'm back as well. |
| 15:42:57 | 14 | THE COURT:  Very well. |
| 15:42:58 | 15 | MR. BIEBIGHAUSER:  Judge, I was about to make |
| 15:43:01 | 16 | objections to the Court's sentence.  Mr. Alexander |
| 15:43:04 | 17 | objects that the sentence is substantively unreasonable |
| 15:43:08 | 18 | for the reasons already mentioned, and that it's |
| 15:43:10 | 19 | procedurally unreasonable for the reasons set forth in |
| 15:43:14 | 20 | the defendant's sentencing memorandum regarding the |
| 15:43:17 | 21 | process for an upward departure.  Those two objections |
| 15:43:21 | 22 | Mr. Alexander has in this case. |
| 15:43:22 | 23 | THE COURT:  All right.  Those objections will be |
| 15:43:24 | 24 | noted for the record.  At this stage of the process, I'm |
| 15:43:28 | 25 | overruling those objections, however. |

15:43:31  1          Mr. Alexander, then hear the sentence of the court

15:43:34  2   in this case.  The Court determines that the presentence

15:43:40  3   investigation report, as previously modified by the

15:43:42  4   Court's order, as well as the previously stated findings,

15:43:45  5   are accurate and I'm ordering those findings incorporated

15:43:47  6   into the following sentence:  pursuant to the Sentencing

15:43:50  7   Reform Act of 1984, it is the judgment of the court that

15:43:53  8   the defendant Matthew Alexander III is hereby sentenced

15:43:56  9   to the custody of the Bureau of Prisons for a term of 78

15:44:01  10  months on Count 1 of the indictment.  This term of

15:44:04  11  imprisonment is to be followed by three years of

15:44:07  12  supervised release.

15:44:08  13         Within 72 hours of your release from the custody

15:44:11  14  of the Bureau of Prisons, you are to report to the

15:44:14  15  United States Probation Office in the district in which

15:44:15  16  you are released.  While on supervised release, you are

15:44:19  17  to comply with the mandatory and standard conditions of

15:44:21  18  supervision adopted by this court, as well as the special

15:44:25  19  conditions of supervision set forth in Part D of the

15:44:28  20  presentence report.

15:44:30  21         Defendant's ordered to pay the United States a

15:44:32  22  special assessment of $100 to the Crime Victims Fund

15:44:35  23  pursuant to 18 United States Code § 3013.  That

15:44:38  24  assessment is due immediately and it may be satisfied

15:44:41  25  while you're in Bureau of Prisons custody.  No fine is

15:44:44   1   imposed.

15:44:45   2        I'm required to advise all parties of their

15:44:47   3   respective rights to appeal this sentence and conviction.

15:44:51   4   Appeals taken from this sentence are subject to 18 United

15:44:55   5   States Code § 3742.

15:44:57   6        I will tell you, Mr. Alexander, that in your plea

15:45:01   7   agreement you did a general waiver of appeals but you

15:45:04   8   reserved the right to appeal my denial of your earlier

15:45:08   9   suppression motion.  However, because I have given you a

15:45:11   10  sentence above the guideline range, your right to appeal

15:45:15   11  is now fully intact and your waiver does not apply, so

15:45:20   12  you have a right to appeal this sentence and conviction

15:45:22   13  in full.

15:45:22   14       However, you will lose that right if you do not

15:45:26   15  timely file a notice of appeal in the district court

15:45:28   16  within 14 days.  If you request, the clerk of our court

15:45:33   17  will prepare and file a notice of appeal in your behalf.

15:45:36   18  And if you cannot pay costs of appeal, you have the right

15:45:39   19  to apply for leave to appeal in forma pauperis.  That is

15:45:43   20  the judgment and sentence of the court.  The defendant

15:45:45   21  will remain in the custody of the United States Marshals

15:45:47   22  pending designation of an appropriate facility in which

15:45:49   23  to serve his sentence by the Federal Bureau of Prisons.

15:45:52   24       Mr. Biebighauser, does your client have a request

15:45:56   25  as to placement for where within the BOP?

| | | |
|---|---|---|
| 15:46:00 | 1 | MR. BIEBIGHAUSER:  Mr. Alexander, we discussed |
| 15:46:02 | 2 | that briefly at one point.  Did you have a final |
| 15:46:05 | 3 | recommend -- or final request where to serve your |
| 15:46:09 | 4 | sentence? |
| 15:46:09 | 5 | THE DEFENDANT:  It depends on my custody.  I would |
| 15:46:11 | 6 | like to go to -- I would like to go to El Reno.  If not, |
| 15:46:16 | 7 | Marion.  Marion, USP. |
| 15:46:22 | 8 | MR. BIEBIGHAUSER:  Okay.  Judge, I know that you |
| 15:46:24 | 9 | don't have any control and can't predict the custody |
| 15:46:28 | 10 | status that Mr. Alexander will ultimately receive.  He'd |
| 15:46:31 | 11 | request those prisons, both El Reno and Marion, he and I |
| 15:46:35 | 12 | discussed previously, for proximity to family and also |
| 15:46:39 | 13 | for programming in those institutions. |
| 15:46:42 | 14 | THE COURT:  All right.  I do not have the ability |
| 15:46:43 | 15 | to direct the BOP as to where they must place a |
| 15:46:47 | 16 | defendant.  The BOP tells me that they consider my |
| 15:46:50 | 17 | recommendations and that they give them more weight if I |
| 15:46:52 | 18 | include a reason or a rationale for the recommendation, |
| 15:46:55 | 19 | so I will make those two recommendations for the reason |
| 15:46:59 | 20 | Mr. Biebighauser just stated and request BOP to consider |
| 15:47:02 | 21 | that on those bases. |
| 15:47:05 | 22 | We have no counts to dismiss in the indictment. |
| 15:47:08 | 23 | Is there anything else then that we need to take up |
| 15:47:10 | 24 | regarding this hearing this afternoon? |
| 15:47:12 | 25 | MR. METZGER:  I don't believe so, Your Honor. |

| | | |
|---|---|---|
| 15:47:15 | 1 | MR. BIEBIGHAUSER:  Judge, I have one brief matter |
| 15:47:16 | 2 | I'd like to take up off the record if the Court can spare |
| 15:47:20 | 3 | about a minute. |
| 15:47:21 | 4 | THE COURT:  Okay, but you want to stay on |
| 15:47:23 | 5 | obviously the conference to do that. |
| 15:47:25 | 6 | MR. BIEBIGHAUSER:  Yes, please. |
| 15:47:26 | 7 | THE COURT:  All right.  Well, that will conclude |
| 15:47:27 | 8 | the hearing in this case.  And, Ms. Wilkinson, we'll be |
| 15:47:31 | 9 | off the record. |
| 15:52:58 | 10 | (Whereupon, the proceedings were concluded at |
| 15:52:58 | 11 | 3:47 P.M.) |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

C E R T I F I C A T E

        I, Johanna L. Wilkinson, United States Court Reporter in and for the District of Kansas, do hereby certify:

        That the above and foregoing proceedings were taken by me at said time and place in stenotype;

        That thereafter said proceedings were transcribed under my direction and supervision by means of computer-aided transcription, and that the above and foregoing constitutes a full, true and correct transcript of said proceedings;

        That I am a disinterested person to the said action.

        IN WITNESS WHEREOF, I hereto set my hand on this the 4th day of January, 2021.


                s/ Johanna L. Wilkinson
                Johanna L. Wilkinson, CSR, CRR, RMR
                United States Court Reporter