FILED
United States Court of Appeals
Tenth Circuit

February 11, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>MATTHEW ALEXANDER, III,<br><br>Defendant - Appellant. | No. 20-3238<br>(D.C. No. 6:19-CR-10102-EFM-1)<br>(D. Kan.) |

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BACHARACH**, and **EID**, Circuit Judges.
_____

Defendant Matthew Alexander III was stopped by police officers after belatedly signaling a turn. During the traffic stop an officer conducted a protective sweep of Defendant's vehicle and discovered synthetic marijuana. He was arrested and a search incident to that arrest led to the discovery of a firearm. After the government charged Defendant with being a felon in possession of a firearm, he moved to suppress statements he made to the police and the physical evidence found in his vehicle and on his person on the ground that they were obtained as fruits of a vehicle search that violated the Fourth Amendment. The United States District Court

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

for the District of Kansas denied the motion to suppress. Defendant appeals that decision and the 78-month sentence on his plea of guilty. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's denial of the motion to suppress but reverse and remand to correct an admitted error in sentencing.

### I.    BACKGROUND

Officers Jared Henry and Jamie Thompson of the Wichita Police Department were on patrol about noon on June 13, 2019. The two officers, each with at least a decade of experience as police officers, were both assigned to the Violent Crime Community Response Team, whose "primary responsibilities [were] to respond to violent crime situations and address neighborhood complaints and violent offenders in the city." R., Vol. 1 at 78. They were traveling eastbound when Officer Henry spotted a gray Pontiac traveling westbound being driven by someone who he thought looked familiar. Officer Henry made a U-turn to follow the vehicle and determine the registered owner. Shortly thereafter, the driver turned on the left-turn signal as if to indicate a lane change, but then switched to the right-turn signal before abruptly turning into the parking lot of a Hardee's restaurant. The signal was activated only 20 feet before the turn, contrary to Kansas law, which requires continuous signaling for at least 100 feet, *see* Kan. Stat. Ann. § 8-1548(b). After entering the parking lot the vehicle drove around the building and "seemed to somewhat accelerate as it rounded a curve, . . . making [Officer Henry] believe that the vehicle was going to take off." R., Vol. 1 at 81–82. Officer Henry then activated his emergency lights and siren, and the vehicle stopped.

Officer Henry asked Defendant, the sole occupant of the vehicle, to step out and then performed a pat-down search. While performing the pat-down search, Officer Henry relayed to Officer Thompson "that [he] knew it was Matt Alexander," and Officer Thompson "immediately went to the vehicle to conduct a sweep for weapons." *Id.* at 87. She testified that the mere fact that Officer Henry removed Defendant from the vehicle indicated that he did "not want that driver to be near that car." *Id.* at 140–41. Officer Henry finished patting down Defendant and having discovered no weapons he directed Defendant to sit on the curb, about six to ten feet from Defendant's vehicle.

Meanwhile, Officer Thompson conducted a sweep of the vehicle for weapons. As part of this sweep she opened the center console of the vehicle and found what she initially thought was marijuana, but later learned was K2, synthetic marijuana. After discovering this substance, Officer Thompson indicated to Officer Henry that he should arrest Defendant and he placed Defendant in handcuffs. Officer Henry later "noticed a bulge in between [Defendant's] legs near his crotch," *Id.* at 90, which prompted him to conduct a search incident to arrest. He discovered a handgun in Defendant's pants pocket, after which he placed Defendant in his patrol car and read him his *Miranda* rights.

Defendant was indicted in Kansas federal court on one count of being a prohibited person in possession of a firearm. He moved to suppress the handgun discovered in his pocket, the synthetic marijuana found in the center console, and statements he made after being read his *Miranda* rights. He argued that the physical

3

evidence and his statements should be suppressed as the fruits of an unlawful protective sweep of his vehicle.

At the suppression hearing Officer Henry testified to the facts and circumstances that made him suspect that Defendant might be carrying a firearm.[1] For one, Defendant pulled his vehicle into the first-available parking lot after the officers started following him and appeared to accelerate through a turn in the Hardee's parking lot, leading Officer Henry to worry that the vehicle might take off. According to Officer Henry, these actions were consistent with nervous, evasive behavior.

Also, over the years Officer Henry had several noteworthy encounters with Defendant. In 2010 Officer Henry used a Taser to detain Defendant after he fled from a traffic stop. Officer Henry also testified that Defendant fled from him during a traffic stop in 2012. In 2016, while Officer Henry was off duty, Defendant told him that the cast on his arm was from "punching a glass window after he had drank too

---

[1] In upholding Officer *Thompson*'s protective search of Defendant's vehicle and denying the motion to suppress, the district court relied on Officer *Henry's* knowledge and experience with Defendant. Defendant originally argued in this appeal that the district court erred by "rel[ying] exclusively on Officer Henry's uncommunicated knowledge to justify Officer Thompson's search," Aplt. Br. at 28, claiming that the collective-knowledge doctrine did not apply here. But before the district court, Defendant did not specifically argue that Officer Thompson lacked reasonable suspicion to perform a protective search of his vehicle. Defendant concedes in his reply brief that, having failed to "make an officer-specific argument below," his collective-knowledge argument is waived and that he cannot show "good cause" under Federal Rule of Criminal Procedure 12(c)(3) for this court to consider his untimely claim. Aplt. Reply Br. at 1. Given Defendant's concession, we consider what Officer Henry knew in assessing whether there was reasonable suspicion to perform a protective search of the vehicle.

much." R., Vol. 1 at 84. To Officer Henry's knowledge, Defendant was not carrying a firearm during these incidents. Then, in 2017, Officer Henry personally conducted surveillance on Defendant because he was identified as a potential suspect in a homicide. During this investigation Officer Henry saw Defendant enter a home believed to be involved in the homicide while holding "an item approximately the size of a football." *Id.* at 115–16. After Defendant left, police officers entered the home and talked with a man inside who said that Defendant brought a towel in: "Inside that towel was a firearm consistent with the item [Officer Henry] observed [Defendant] holding size-wise." *Id.* at 116.

In addition, at the time of the traffic stop in this case, Officer Henry knew that Defendant had twice been convicted of being a felon in possession of a firearm. On one of those occasions he had discharged a firearm into an occupied dwelling. He also knew that Defendant had been convicted of aggravated battery, though he did not know whether that conviction involved a weapon.

Finally, Officer Henry was aware that Defendant was included in a law-enforcement database as a gang member. In Officer Henry's experience, gang members are likely to carry firearms.

The district court denied Defendant's motion to suppress, ruling that the initial traffic stop was lawful and the officers' warrantless search of Defendant's vehicle was justified as a protective sweep under *Michigan v. Long*, 463 U.S. 1032 (1983). Defendant entered a conditional plea of guilty to the charge of possession of a firearm by a prohibited person, *see* 18 U.S.C. § 922(g)(1), reserving his right to

appeal the denial of his motion to suppress. He now appeals from that denial, challenging only the lawfulness of the protective search and the sentencing-guidelines calculation.

## II. DISCUSSION

### A. Motion to Suppress

"In reviewing the denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous." *United States v. Hammond*, 890 F.3d 901, 905 (10th Cir. 2018). Ultimately, however, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

"[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that [1] the suspect is dangerous and [2] the suspect may gain immediate control of weapons." *Long*, 463 U.S. at 1049 (internal quotation marks omitted; bracketed numerals added). Defendant argues that the district court erred in finding that both requirements—dangerousness and the prospect of immediate access to weapons—for a *Long* protective search were satisfied.

We begin with the dangerousness requirement. Defendant asserts that a district court cannot make a finding of dangerousness based solely on the suspect's criminal history yet the district court did precisely that in this case. Although he acknowledges

6

that at the suppression hearing the government presented evidence of his dangerousness other than what is recited in the court's order, he contends that the district court implicitly rejected that evidence because it was not mentioned in the court's order denying the motion to suppress.

The district court's order states in the paragraph on dangerousness:

> Although the officers searched [Defendant's] vehicle without a warrant, the Court concludes that the protective sweep exception applies. Considering the totality of the circumstances, the officers had a reasonable and articulable suspicion that [Defendant] was dangerous and could potentially gain access to a weapon in the car. Henry knew that [Defendant] was a convicted felon who had a record of unlawfully possessing firearms. Henry also knew that [Defendant] had been violent in the past. These facts supported the officers' reasonable suspicion that [Defendant] was potentially dangerous.

R., Vol. 1 at 50. The paragraph is brief. It mentions only some of the evidence of dangerousness. But there is nothing to suggest that it rejected the other evidence. Indeed, that would have been remarkable since that evidence was internally consistent and uncontradicted, and Defendant had not raised any challenge to its truth. We recognize that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record." Fed. R. Crim. P. 12(d). But the purpose of that provision is to make sure that the district court addresses factual *disputes* (that is, *issues*) that must be resolved for there to be meaningful appellate review. *See United States v. Torres*, 987 F.3d 893, 898 (10th Cir. 2021) ("A finding is essential if it is required for meaningful review."); *see also United States v. Beck*, 140 F.3d 1129, 1131 (8th Cir. 1998) ("[B]ecause the relevant facts in this case are undisputed, we need not remand for further findings and may rule based on the

7

record currently before us."); *United States v. Koshnevis*, 979 F.2d 691, 694–95 (9th Cir. 1992) ("Although the factual findings made by the district court were not extensive, the evidence was not in conflict. . . . By denying the motion to dismiss, it is evident that the district court agreed with the testimony of [the sole witness]. The factual findings by the district court therefore satisfy the requirements of [Rule] 12."). It is not the purpose of the provision to set a trap for district courts, requiring reversal of their decisions for failure to recite all the undisputed facts. District judges are busy enough without imposing that requirement. *Cf. Ornelas*, 517 U.S. at 700 ("The background facts, though rarely the subject of explicit findings [in an order resolving a motion to suppress], inform the judge's assessment of the historical facts."). When the district court ruled that "the totality of the circumstances" supported a finding of reasonable suspicion of dangerousness, R., Vol. 1 at 50, we can fairly infer that the circumstances considered included the uncontradicted and unchallenged evidence presented at the hearing.

Defendant argues in the alternative that the officers lacked reasonable suspicion of dangerousness even if we consider those facts not explicitly mentioned in the district court's order. He relies on statements by this court stating that reasonable suspicion of dangerousness cannot be based solely on the suspect's criminal history. *See United States v. Rice*, 483 F.3d 1079, 1085 (10th Cir. 2007) ("a criminal record, standing alone, is not sufficient to create reasonable suspicion of anything"); *Hammond*, 890 F.3d at 906 ("Standing alone, a criminal record—let alone arrests or suspected gang affiliation—is not sufficient to create reasonable

8

suspicion of anything." (internal quotation marks omitted)); *Torres*, 987 F.3d at 904 ("As [defendant] argues, reasonable suspicion does not arise solely from his criminal record or gang affiliation.").[2]

Here, however, there is substantial evidence beyond Defendant's criminal history. To begin with, his response to being followed by a police vehicle strongly suggested concern about having an interaction with officers. He abruptly turned into the first available driveway, after (presumably because of agitation) incorrectly signaling that he would be turning in the other direction; and once in the Hardee's

---

[2] It should be noted that each of the statements was dictum—we held that there was reasonable suspicion of dangerousness in each case. Also, the reason criminal history alone does not suffice to establish reasonable suspicion is not because criminal history is not probative. On the contrary, a history of violence is generally considered very probative, and is often used in the criminal-justice system, such as to deny pretrial release and to impose a harsher sentence. The reason not to rely on criminal history alone has been policy. As stated in *Hammond*, "'[I]f the law were otherwise, any person with any sort of criminal record—or even worse, a person with arrests but no convictions—could be subjected to a *Terry*-type investigative stop by a law enforcement officer at any time.'" 890 F.3d at 907 (quoting *United States v. Sandoval*, 29 F.3d 537, 543 (10th Cir. 1994)); *see also United States v. Laughrin*, 438 F.3d 1245, 1247 (10th Cir. 2006) (recognizing the "basic precept that law-enforcement officers not disturb a free person's liberty solely because of a criminal record"). It is therefore important to examine the implications of each application of the policy. Our dicta in the reasonable-suspicion-of-dangerousness cases have rested on the assumption that the assessment of reasonable suspicion should be the same in that context as when determining reasonable suspicion to initiate an investigative stop. But that assumption is not obviously correct. A leading search-and-seizure treatise has indicated that because "a certain level of risk of death or serious bodily harm is less tolerable than an equivalent risk of undetected criminality, . . . in a stop-and-frisk situation the likelihood the detainee is armed and dangerous need not reach the level which would be required if the question instead were whether there would be grounds to stop that individual on suspicion he is committing the offense of carrying a concealed weapon." 4 Wayne R. LaFave, *Search & Seizure* § 9.6(a), at 906 (6th ed. 2020). We leave further analysis of the issue for another day. In this case we need not challenge our prior dicta. (Judge Bacharach does not join this footnote.)

parking lot, he appeared to accelerate to leave the parking lot until Officer Henry activated his siren and emergency lights. The officers could reasonably believe that Defendant was worried about more than just getting a traffic citation. Given his prior felony convictions, including a conviction for possession of a firearm by a convicted felon, an obvious cause for such worry would be that he had a firearm with him. Moreover, Officer Henry knew of Defendant's volatile temper because of the prior occasion when Defendant had told him about badly cutting himself by smashing a window with his hand. Put this together with Defendant's gang membership and Officer Henry's personal observations linking Defendant to a potential murder weapon two years earlier, as well as his criminal record of convictions, and one can conclude only that the concern with Defendant's dangerousness was reasonable.

We now turn to consider whether *Long*'s second requirement—that the officers reasonably suspected that Defendant could "gain immediate control of weapons" in the vehicle—was satisfied. The Supreme Court in *Long* identified three circumstances in which that could happen: (1) the suspect could "break away from police control and retrieve a weapon from his automobile"; (2) "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside"; and (3) "the suspect may be permitted to reenter the vehicle before the . . . investigation is over, and again, may have access to weapons." 463 U.S. at 1051–52. When, as here, there are no disputed historical facts, determining whether the risk of access is sufficient to justify the protective search is a matter of law, which we review de novo. *See Ornelas*, 517 U.S. at 695–99; *see also*

*United States v. Arvizu*, 534 U.S. 266, 275 (2002) (observing that in *Ornelas* the Court "reasoned that *de novo* review [of a ruling on reasonable suspicion] would prevent the affirmance of opposite decisions on identical facts from different judicial districts in the same circuit").

We address only the first and third possibilities, determining that each could justify the protective search. Regarding the risk that Defendant could break away and retrieve a gun from the vehicle, that risk is certainly diminished by his being seated on the curb 10 feet from the vehicle while being outnumbered by two police officers. Nevertheless, this court has held that there was sufficient risk in circumstances where the opportunity to break free was certainly less than here. In particular, in *United States v. Dennison*, 410 F.3d 1203, 1206, 1213 (10th Cir. 2005), we held that there was a sufficient risk that the handcuffed defendant would gain access to a weapon, even though he was standing near the rear of the truck next to an officer when another officer conducted a protective search of the truck. *See also United States v. Palmer*, 360 F.3d 1243, 1247–48 (10th Cir. 2004) (defendant was seated in patrol car while one of two officers on the scene conducted a protective search of Defendant's car).

As for the third possibility, Defendant makes two arguments. First, he contends that recognition of the possibility that the suspect will be released after the investigation essentially permits a protective search whenever there is reasonable suspicion of dangerousness. But that is an argument for him to pursue with the Supreme Court. We are not at liberty to ignore what that Court said in *Long*. Second,

11

he argues that we should not consider this risk in this case because at the time of the protective search there was insufficient evidence for the officers to know whether they might release him after the detention for the traffic violation. He observes that the protective search was conducted before Officer Henry had checked whether Defendant had an outstanding warrant that would have required the officers to arrest him (and not release him after completing their investigation). What Defendant overlooks, however, is that intrusions by police officers need not be predicated on certainties. The officers had reason to believe that Defendant would not be detained after the investigation. There was a possibility that he had an outstanding warrant against him, just as there was a possibility that the investigation at the scene would lead to his arrest; but even if those possibilities were more likely than his ultimate release, there would still be sufficient reason to believe (when the protective search was conducted) that he would ultimately be released. *See United States v. Vaccaro*, 915 F.3d 431, 437–38 (7th Cir. 2019) (Barrett, J.) (*Long*'s second prong was satisfied since defendant conceded that he had not been arrested at time of the vehicle search and he would have been permitted to return to his vehicle if the officers had found no contraband).

For the reasons stated above, the officers had the reasonable suspicion necessary to conduct a protective search of the vehicle under *Long*.

    **B.**    **Sentencing**

Defendant contends that the district court erred in calculating his guideline sentencing range by treating his prior Kansas state conviction for reckless aggravated

battery as a "crime of violence" under USSG § 4B1.2(a)(1). *See United States v. Ash*, 7 F.4th 962, 963 (10th Cir. 2021). Although Defendant did not preserve this issue in the district court, the government concedes that he is entitled to relief on plain-error review. We agree with the concession and remand to the district court for resentencing.

### III. CONCLUSION

We **AFFIRM** the district court's denial of Defendant's motion to suppress but **REVERSE** the sentence imposed by the district court and **REMAND** for resentencing in accordance with this order.

    Entered for the Court

    Harris L Hartz
    Circuit Judge